# INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

**Karkey Karadeniz Elektrik Uretim A.S.**

**v.**

**Islamic Republic of Pakistan**

**(ICSID Case No. ARB/13/1)**

**Annulment Proceeding**

---

## DECISION ON THE STAY OF ENFORCEMENT OF THE AWARD

---

*Members of the ad hoc Committee*
Prof. Dr. Karl-Heinz Böckstiegel, President of the *ad hoc* Committee
Mr. Cavinder Bull SC, Member of the *ad hoc* Committee
Ms. Dorothy Ufot SAN, Member of the *ad hoc* Committee

*Secretary of ad hoc Committee*
Ms. Lindsay Gastrell

22 February 2018

*Karkey Karadeniz Elektrik Uretim A.S. v. Islamic Republic of Pakistan*
(ICSID Case No. ARB/13/1) Annulment Proceeding

# Contents

I.    INTRODUCTION ...................................................................................................1

    A.   The Parties ........................................................................................................1

    B.   The Present Decision .........................................................................................1

    C.   The Committee's Terminology and Reasoning ...............................................2

II.   THE PARTIES' REQUESTS FOR RELIEF RELATING TO THE STAY OF ENFORCEMENT .................................................................................................2

    A.   Pakistan's Application for Annulment .............................................................2

    B.   Pakistan's Submissions on the Stay of Enforcement ......................................3

    C.   Karkey's Submissions on the Stay of Enforcement .......................................3

III.  PROCEDURAL HISTORY ....................................................................................4

IV.   SUMMARY OF THE PARTIES' POSITIONS ....................................................9

    A.   Pakistan's Position ...........................................................................................9

        (1)   Moving Party and Burden of Proof ......................................................10

        (2)   Applicable Legal Standard ...................................................................11

        (3)   Circumstances that Require the Stay in this Case ................................12

        (4)   Security for the Award ..........................................................................16

    B.   Karkey's Position ...........................................................................................19

        (1)   Moving Party and Burden of Proof ......................................................19

        (2)   Applicable Legal Standard ...................................................................21

        (3)   Circumstances that Require the Stay in this Case ................................23

        (4)   Security for the Award ..........................................................................27

V.    THE AD HOC COMMITTEE'S CONSIDERATIONS AND CONCLUSIONS ..............30

    A.   The Relevant Legal Provisions ......................................................................30

    B.   Discretion of the Committee ..........................................................................31

    C.   Burden of Proof ..............................................................................................32

    D.   Are There "Circumstances that Require" Continuation of the Stay? ...........33

VI.   DECISION ............................................................................................................41

## I.   INTRODUCTION

### A.   The Parties

1.   The applicant in this annulment proceeding is the Islamic Republic of Pakistan ("**Pakistan**" or "**Applicant**"). Pakistan is represented by Mr. Ahmad I. Aslam, the Head of the International Disputes Unit of the Office of the Attorney-General of Pakistan in Islamabad; Dr. Ignacio Torterola, Ms. Mariana Lozza, Mr. Guillermo Moro and Mr. Gary Shaw of GST LLP in Washington, DC; and Dr. Diego Brian Gosis, Mr. Quinn Smith, Ms. Veronica Lavista and Ms. Katherine Sanoja of GST LLP in Miami.

2.   The respondent in this annulment proceeding is Karkey Karadeniz Elektrik Uretim A.S. ("**Karkey**"), a company organised under the laws of Turkey. Karkey is represented by Mr. Paolo Di Rosa and Mr. Lawrence A. Schneider of Arnold & Porter Kaye Scholer LLP in Washington, DC; Mr. David Reed and Mr. Monty Taylor of Arnold & Porter Kaye Scholer (UK) LLP in London; Mr. Anton A. Ware, Ms. Amy Endicott and Mr. John Muse-Fisher of Arnold & Porter Kaye Scholer LLP in San Francisco; Ms. Maria Chedid of Baker & McKenzie LLP in San Francisco; Mr. Nicholas O. Kennedy of Baker & McKenzie LLP in Dallas; and Mr. Syed Ahmad Hassan Shah of Hassan Kaunain Nafees, Legal Practitioners & Advisers in Islamabad.

### B.   The Present Decision

3.   This Decision addresses the question of whether the stay of enforcement should be terminated or should continue until the *ad hoc* Committee (the "**Committee**") issues the decision on annulment. The Committee first sets out the Parties' respective requests (Section II) and the relevant procedural history (Section III). In Section IV, the Committee summarizes the Parties' positions, both on the relevant standards for the stay of enforcement and on application of these standards to the present case. The Committee then provides its considerations and conclusions in Section V and, finally, sets out its Decision in Section VI.

### C.     The Committee's Terminology and Reasoning

4.     The Committee has carefully examined all the arguments and evidence presented by the Parties. The Committee does not consider it necessary to reiterate in this Decision all such arguments or evidence, which are well known to the Parties. The Committee discusses only those parts of the submissions which it considers most relevant for its conclusions. Therefore, insofar as any matter has not been specifically identified or recorded in the body of this Decision, this does not mean that it has not been fully considered.

5.     The Parties have extensively referred to decisions of other ICSID *ad hoc* committees. The Committee has considered these decisions and the Parties' arguments based upon them to the extent that they shed useful light on the issues at stake here. In view of the considerable number of the decisions accumulated by now regarding the stay of enforcement, and the diversity among them, it is obvious that the Committee cannot accept and come out in line with all conclusions in these earlier decisions. In its reasoning, the Committee will refer to only some of these decisions which it considers to be of particular relevance for its own conclusions in the present Decision.

## II.     THE PARTIES' REQUESTS FOR RELIEF RELATING TO THE STAY OF ENFORCEMENT

### A.     Pakistan's Application for Annulment

6.     On 27 October 2017, Pakistan filed an application (the "**Annulment Application**") seeking annulment of the award rendered on 22 August 2017 (the "**Award**") in the original arbitration *Karkey Karadeniz Elektrik Uretim A.S. v. Islamic Republic of Pakistan* (ICSID Case No. ARB/13/1).

7.     Pakistan's request for relief in the Annulment Application includes a request "that the stay of enforcement of the Award be granted until the *ad hoc* Committee issue[s] its decision on this request for annulment, in accordance with Article 52 of the ICSID Convention and Arbitration Rule 54."[1]

---

[1] Application for Annulment, ¶ 106(b).

8.     In relation to this request, the Annulment Application states that

> Pakistan reserves its right to present arguments before the *ad hoc*
> Committee with regard to its request that the enforcement of the
> Award be stayed, including the reasons why such stay of
> enforcement should be maintained until the Committee decides on
> the request for annulment, in the procedural calendar that the
> Committee establishes if it considers necessary.[2]

### B.     Pakistan's Submissions on the Stay of Enforcement

9.     In its submissions on the stay of enforcement, Pakistan requests that the *ad hoc* Committee:

> (a) Accept into the record the formal declaration presented by
> Pakistan Attorney General;
>
> (b) Reject Karkey's request that the Stay of Enforcement of the
> Award be terminated;
>
> (c) Maintain the Stay of Enforcement of the Award until the ad hoc
> Committee issues its decision on Pakistan's Request for Annulment
> without security;
>
> (d) Order Karkey to pay for all costs and fees of the proceeding.[3]

### C.     Karkey's Submissions on the Stay of Enforcement

10.    In Karkey's submissions on the stay of enforcement, it requests that the *ad hoc* Committee:

> a. Decline to continue the stay of enforcement of the Award;
>
> b. Alternatively, require Pakistan, on the one hand, to provide
> security for the payment of the Award in the form of, (a) an
> unconditional and irrevocable bank guarantee or standby letter of
> credit … (b) an appropriately capitalized escrow account … or
> (c) any other form that the Committee determines is just and
> reasonable in the circumstances, and on the other hand, to pay the
> costs to maintain the *Alican Bey* and the *Iraq* while the stay
> continues.

---

[2] Application for Annulment, ¶ 105.

[3] Pakistan's First Submission, ¶ 80; Pakistan's Reply Submission, ¶ 69. The request under (a) was included in the Reply Submission only. The remaining requests are identical in the two submissions.

c. Impose on Pakistan all costs and attorney's fees incurred in this proceeding in connection with the issue of the stay of enforcement.[4]

## III.    PROCEDURAL HISTORY

11.    On 27 October 2017, Pakistan filed the Annulment Application with the International Centre for Settlement of Investment Disputes ("**ICSID**") pursuant to Article 52 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "**Convention**") and Rule 50 of the ICSID Rules of Procedure for Arbitration Proceedings ("**Arbitration Rules**").

12.    On 7 November 2017, the Secretary-General of ICSID registered the Annulment Application and so notified the Parties. The Secretary-General's notice stated the following regarding the provisional stay of enforcement:

> The Application for Annulment contains a request for a stay of the enforcement of the Award, pursuant to Article 52(5) of the ICSID Convention. ICSID Arbitration Rule 54(2) provides that the Secretary-General shall, together with the notice of registration of the Application for Annulment, inform the parties of the provisional stay of the Award. Accordingly, I hereby notify you that the enforcement of the Award is provisionally stayed.

13.    On 5 December 2017, the Committee was constituted in accordance with Article 52(3) of the Convention. Its members are Prof. Dr. Karl-Heinz Böckstiegel (German), serving as President, Mr. Cavinder Bull (Singaporean) and Ms. Dorothy Ufot (Nigerian). All members were appointed by the Chairman of the Administrative Council.

14.    On 6 December 2017, the Committee consulted the Parties regarding arrangements for the first session. The Committee proposed to hold the first session in person and informed the Parties that the Members would be available for a meeting in Europe on 5 February 2018. Both Parties subsequently confirmed their availability and agreed that the first session would be held in Paris on that date.

---

[4] Karkey's First Submission, ¶ 50; Karkey's Reply Submission, ¶ 53.

15.    By letter of 19 December 2017, Pakistan made the following statement and request regarding the stay of enforcement:

> Pakistan notes that the Award is currently stayed as provided for by the Secretary General in the Notice of Registration of November 7, 2017. Pakistan additionally notes that, unless Karkey requests that the stay be terminated in the terms of Arbitration Rule 54(2), second paragraph, the stay shall be continued until a decision on the request is rendered.
>
> Accordingly, Pakistan respectfully requests that the Committee confirm this understanding, and hold Karkey responsible for any fees and expenses [and eventually damages] incurred by Pakistan or its instrumentalities if any attempts at enforcement of the Award are undertaken.

16.    On 28 December 2017, the ICSID Secretariat circulated a draft agenda for the first session and a draft Procedural Order No. 1 to facilitate the Parties' discussion on procedural issues in advance of the first session.

17.    Upon the invitation of the Committee, Karkey responded to Pakistan's letter of 19 December 2017 on 2 January 2018. Karkey argued that Pakistan had "misinterpret[ed] the relevant ICSID norms governing the stay of enforcement of awards," and set out what it considers the proper interpretation of Article 52(5) of the Convention and Arbitration Rule 54. In addition, Karkey stated that "[f]or avoidance of doubt, Karkey hereby formally requests termination of the stay." In light of this request, Karkey stated that the stay would automatically terminate within 30 days pursuant to Arbitration Rule 54(2), unless the Committee decided to continue the stay before then. In this regard, Karkey made the following proposal:

> However, should the Committee wish for the Parties to address the stay orally at the 5 February 2018 hearing, and given the need for some time after such hearing for the Committee to make a decision, Karkey would not oppose the granting of (i) an additional period of 7 days after the hearing for the Committee to issue its decision without opinion (*i.e.*, a decision whether or not the stay should continue, absent which the stay would be automatically terminated pursuant to Arbitration Rule 54(2)); and (ii) a further 14 days from the decision for the Committee to issue an opinion setting forth its reasoning.

18.   In the same letter, Karkey proposed a briefing schedule for the Parties' submission on the stay of enforcement.

19.   On 3 January 2018, the Committee set the following schedule for the Parties' submissions on the stay of enforcement, which would allow for two rounds of written submissions in advance of the first session on 5 February 2018:

- The Parties shall submit simultaneous briefs (with a limit of 25 pages) on Friday, 12 January 2018.
- The Parties shall submit simultaneous reply briefs (with a limit of 15 pages) on Friday, 26 January 2018.
- Following the first session on Monday, 5 February 2018, the Committee will hold an oral discussion on the stay of enforcement, during which each Party will be permitted to make an introductory oral submission of no more than 30 minutes.

20.   By letter of 4 January 2018, Pakistan requested that the Committee amend this procedure. Karkey submitted that the Committee had ruled on Karkey's letter of 2 January 2018 without providing Pakistan the opportunity to respond. Pakistan then provided its response to Karkey's letter, arguing that Karkey had misinterpreted the relevant provisions. Pakistan proposed that, because Karkey had requested termination of the stay, Karkey should first present its reasons for termination, followed by Pakistan's response, a second round of pleadings, and then oral arguments of 45 minutes each with Karkey presenting first. Pakistan also offered an alternative proposal.

21.   With regard to the automatic termination of the stay, Pakistan stated that

> ICSID annulment committees routinely continue the stay of enforcement of the award until the parties have presented their submissions on the issue and a decision has been reached. In fact, it is highly unusual, if not unheard of, for an *ad hoc* committee to make a decision on stay of enforcement within the 30-day period of Arbitration Rule 54(2).

22.   After considering Pakistan's comments, the Committee responded on 6 January 2018. The Committee decided not to amend the written briefing schedule, noting that Pakistan had already had a number of opportunities to make submissions on the stay of enforcement,

beginning in the Annulment Application. With regard to the Parties' oral submissions, the Committee specified that Pakistan would present first and that, in addition to making a 30-minute introductory presentation, each Party would have a further 15 minutes to present any rebuttal statement.

23.     In accordance with the Committee's briefing schedule, on 12 January 2018, Pakistan filed its first submission on the stay of enforcement, including Exhibits AP-001 to AP-027 and Legal Authorities APL-001 to APL-024 ("**Pakistan's First Submission**"), and Karkey filed its first submission on the stay of enforcement, including Exhibits AC-001 to AC-007, C-001 and C-287 and Legal Authorities ACL-001 to ACL-024 ("**Karkey's First Submission**").

24.     Also on 12 January 2018, the Parties provided their joint comments on Procedural Order No. 1. The Parties provided an updated version of their joint comments on 16 January 2018.

25.     On 17 January 2018, the Parties informed the Committee that they had agreed to extend the page limit for their second round of submissions on the stay of enforcement to 20 pages. The following day, the Committee confirmed that the page limit was extended as agreed.

26.     On 26 January 2018, the Parties filed their reply submissions on the stay of enforcement. Pakistan filed its reply submission with Exhibits AP-028 to AP-031 and Legal Authorities APL-025 to APL-033 ("**Pakistan's Reply Submission**"). Karkey filed its submission with Exhibits AC-008 and C-006 and Legal Authorities ACL-025 to ACL-029 ("**Karkey's Reply Submission**").

27.     On 5 February 2018, the Committee held the first session and hearing on the stay of enforcement at the Word Bank office in Paris, France. The following individuals attended the meeting:

Members of the Committee
Prof. Dr. Karl-Heinz Böckstiegel, President
Mr. Cavinder Bull, Committee Member
Ms. Dorothy Udeme Ufot, Committee Member

Secretary of the Committee

Ms. Lindsay Elizabeth Gastrell, ICSID

Participating on behalf of Pakistan
*Counsel:*
Mr. Ignacio Torterola, GST LLP
Mr. Diego Gosis, GST LLP
Ms. Mariana Lozza, GST LLP
Mr. Guillermo Moro, GST LLP
Mr. Gary Shaw, GST LLP
*Parties*:
Mr. Ahmad Irfan Aslam, Additional Attorney General & Head, International Disputes Unit

Participating on behalf of Karkey
*Counsel*:
Mr. Paolo Di Rosa, Arnold & Porter Kaye Scholer LLP
Mr. Lawrence A. Schneider, Arnold & Porter Kaye Scholer LLP
Ms. Maria Chedid, Baker & McKenzie LLP
Mr. Monty Taylor, Arnold & Porter Kaye Scholer (UK) LLP
Mr. John Muse-Fisher, Arnold & Porter Kaye Scholer LLP
Mr. Eugenio Cruz Araujo, Arnold & Porter Kaye Scholer (UK) LLP (Legal Assistant)
*Parties*:
Mr. Orhan Remzi Karadeniz, Karkey Karadeniz Elektrik Uretim A.S.
Ms. Nazlı Dereli Oba  Karkey, Karadeniz Elektrik Uretim A.S.

Court Reporter
Ms. Diana Burden

28. During the meeting, the Committee informed the Parties that it would issue a reasoned decision on the stay of enforcement as soon as possible after the first session. The Committee confirmed that the provisional stay of enforcement of the Award shall remain in effect until the Committee issues its decision on the stay.

29. The Parties made oral submissions on the stay of enforcement as scheduled. In addition, each Party submitted a PowerPoint presentation to accompany its introductory statement ("**Pakistan's Presentation**" and "**Karkey's Presentation**").

30. An audio recording and written transcript of the first session were made, deposited in ICSID's archives, and distributed to the Parties and the Committee.

31. Following the first session, on 6 February 2018, the Committee provided the Parties with an updated draft of Procedural Order No. 1, reflecting the agreements and decisions

discussed during the session, as well as the Committee's decisions on the outstanding issues reached in its deliberations. The Parties were invited to consider the contents of the revised draft and submit any final comments.

32.    On 9 February 2018, Pakistan submitted a letter from its Attorney-General stating that "Pakistan shall abide by and comply with the Award in conformity with Article 53 of the ICSID Convention, if it is not annulled", and offering to provide further assurances in this regard if required by the Committee.

33.    Upon the invitation of the Committee, Karkey responded to the Attorney-General's letter on 13 February 2018. Karkey submitted a letter, Exhibits AC-009 to AC-012 and Legal Authorities ACL-030 to ACL-031. Later that day, Pakistan submitted a request for leave to respond to Karkey's letter, which the Committee subsequently granted.

34.    Also on 13 February 2018, the Parties jointly submitted minor comments on the revised draft of Procedural Order No. 1, and each Party submitted a proposed procedural timetable.

35.    On 16 February 2018, Pakistan submitted its response to Karkey's letter of 13 February 2018, together with Exhibits AP-032 to AP-034 and Legal Authority APL-034.

## IV.    SUMMARY OF THE PARTIES' POSITIONS

### A.    Pakistan's Position

36.    Pakistan submits that the stay of enforcement should be continued until the Committee issues its decision on the Annulment Application. According to Pakistan, Karkey is the moving Party and bears the burden of proof, which it has failed to meet. In any event, Pakistan argues that the circumstances in this case require the continuation of the stay. Pakistan also opposes Karkey's request for security as a condition for continuing the stay.

*Karkey Karadeniz Elektrik Uretim A.S. v. Islamic Republic of Pakistan*
(ICSID Case No. ARB/13/1) Annulment Proceeding

### (1)    Moving Party and Burden of Proof

37.    In Pakistan's view, Karkey is the moving Party because it stated in its letter of 2 January 2018 that "Karkey hereby formally requests termination of the stay."[5] Pakistan acknowledges that it initially requested the stay in the Annulment Application, but considers that Karkey, by requesting termination of the stay, "superseded Pakistan's request and bore the burden of proof set out in Rule 54(4)."[6]

38.    According to Pakistan, the language of Arbitration Rule 54(4) makes clear that the moving Party bears the burden of proof.[7] That provision states that a "*request pursuant to paragraph* (1), *(2) (second sentence) or* (3) *shall specify the circumstances that require the* stay or its modification or *termination*."[8]

39.    In addition, Pakistan cites previous decisions of ICSID *ad hoc* Committees to support its position, including the decisions in *Enron v. Argentina* and *Occidental v. Ecuador*.[9] Pakistan states that in each of these cases, the applicant initially requested a stay of enforcement, but before the committee ruled on that request, the respondent on annulment requested termination of the stay. Therefore, the committee placed the burden of proof on the party requesting termination.[10]

40.    Pakistan accepts that the *ad hoc* committees in *Burlington v. Ecuador* and *Pezold v. Zimbabwe* placed the burden on the applicant State, but Pakistan explains that this is

---

[5] Pakistan's Presentation, slide 12, *quoting* Letter from Karkey to the Members of the Committee of 2 January 2018, pp. 2-3; *see* Pakistan's First Submission, ¶ 40.

[6] Pakistan's Reply Submission, ¶ 5.

[7] Pakistan's First Submission. ¶¶ 41-42; Pakistan's Presentation, slide 11.

[8] Arbitration Rule 54(4) (Pakistan's emphasis).

[9] Pakistan's Reply Submission, ¶ 6; **APL-011**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentine Republic,* ICSID Case No. ARB/01/3, Decision on Claimant's Second Request to Lift Provisional Stay of Enforcement, 20 May 2009; **APL-013**, *Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Ecuador,* ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award, 30 September 2013.

[10] Pakistan's First Submission, ¶¶ 43-46; Pakistan's Reply Submission, ¶ 6; Pakistan's Presentation, slides 13-15; **APL-011**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentine Republic,* ICSID Case No. ARB/01/3, Decision on Claimant's Second Request to Lift Provisional Stay of Enforcement, 20 May 2009, ¶ 6(e) ("a relevant consideration … is whether the party opposing the stay has established circumstances of sufficient doubt as to whether there will be compliance with ICSID Convention obligations on a final award in the event the award is not annulled"); **APL-013**, *Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Ecuador,* ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award, 30 September 2013, ¶96.

because the respondent on annulment had merely opposed the State's request for the stay, rather than formally requesting termination of the stay.[11]

41.     Therefore, Pakistan's position is that Karkey must prove that there are specific circumstances that require the stay to be terminated.[12]

### *(2)     Applicable Legal Standard*

42.     Pakistan notes that *ad hoc* committees have considered the following specific circumstances in considering whether a stay should be lifted, as set forth in the ICSID Background Paper on Annulment:

> the risk of non-recovery of sums due under the award if the award is annulled, non-compliance with the award if the award is not annulled, any history of non-compliance with other awards or failure to pay advances to cover the costs of arbitration proceedings, adverse economic consequences on either party and the balance of both parties' interests.[13]

43.     However, in Pakistan's view, *ad hoc* committees are not in fact competent to address the issue of potential compliance with the Award.[14] Further, in accordance with "general principles of good faith and the practice of international courts and tribunals," committees should assume that a State will comply with its international obligations.[15] Pakistan points out that the Convention regulates compliance with ICSID awards and provides mechanisms for guaranteeing a State's compliance.[16]

---

[11] Pakistan's Reply Submission, ¶ 7; **ACL-001**, *Burlington Resources Inc. v. Republic of Ecuador,* ICSID Case No. ARB/08/05, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶ 4; **ACL-002**, *Bernhard von Pezold and others v. Republic of Zimbabwe,* ICSID Case No. ARB/10/15, Decision on Stay of Enforcement of Award, 24 April 2017, ¶¶ 7-8.

[12] Pakistan's First Submission, ¶ 42; Pakistan's Reply Submission, ¶ 8.

[13] Pakistan's First Submission, ¶ 53; **APL-014**, ICSID, "Updated Background Paper on Annulment for the Administrative Council of ICSID," 5 May 2016, ¶ 56.

[14] Pakistan's First Submission, ¶ 56.

[15] Pakistan's First Submission, ¶ 55, *citing* **APL-018**, *Vestey Group Ltd. v. Bolivarian Republic of Venezuela,* ICSID Case No. ARB/06/4, Award, 15 April 2016, ¶ 445 and **APL-019**, *S.S. Wimbledon (United Kingdom, France, Italy and Japan v. Germany, with Poland Intervening),* 1923 PCIJ Series A, No. 1, p. 32.

[16] Pakistan's First Submission, ¶ 58.

44.     More generally, Pakistan relies on the statement of the *ad hoc* committee in *Libananco v. Turkey* that an "Applicant's interest in a continued stay of enforcement pending the outcome of the annulment proceeding should be given more weight than Respondent's interest in immediate enforcement."[17] According to Pakistan, *ad hoc* Committees have decided to continue the stay of enforcement in the majority of ICSID cases; of the 41 decisions on stay of enforcement issued as of April 2016, 36 granted the stay of enforcement.[18]

45.     Pakistan argues that the few cases in which committees terminated the stay of enforcement involved circumstances not present in this case, such as high-ranking officials expressly refusing to comply with ICSID awards, domestic legal systems contrary to compliance, other creditors seeking to collect awards against the applicant,[19] or an applicant's failure to fulfil payment obligations in ICSID proceedings.[20]

### (3)     *Circumstances that Require the Stay in this Case*

46.     Pakistan submits that the stay must be continued because: (a) the Annulment Application is made in good faith; (b) there is no risk that Pakistan will not comply with its obligations under the Convention; (c) Pakistan has committed to comply with the Award; (d) Karkey would not suffer hardship if the Award were stayed; and (e) Pakistan would suffer hardship if the stay were lifted.

47.     *First*, Pakistan argues that the Annulment Application is fully justified and not dilatory, as asserted by Karkey.[21] For Pakistan, this is evident from the fact that it submitted the Annulment Application just 65 days after the Award was issued. Pakistan considers that it

---

[17] Pakistan's Reply Submission, ¶ 10; **APL-024**, *Libananco Holdings Co. Limited v. Republic of Turkey,* ICSID Case No. ARB 06/08, Decision on Applicant's Request for a Continued Stay of Enforcement of the Award, 7 May 2012, ¶ 54.

[18] Pakistan's Reply Submission, ¶ 10, *citing* **APL-014**, ICSID, "Updated Background Paper on Annulment for the Administrative Council of ICSID," 5 May 2016, ¶ 58.

[19] **ACL-005**, *OI European Group B.V. v. Bolivarian Republic of Venezuela,* ICSID Case No. ARB/11/25, Decision on Stay of Enforcement of the Award, 4 April 2016, ¶ 103.

[20] **ACL-004**, *SGS Société Générale de Surveillance S.A. v. Republic of Paraguay,* ICSID Case No. ARB/07/29, Decision on Paraguay's Request for the Continued Say of Enforcement of the Award, 22 March 2013, ¶¶ 95-100.

[21] Pakistan's Reply Submission, ¶¶ 13-16.

has "requested annulment in good faith forced by the many annullable defects in the Award."[22] Further, Pakistan points out that it agreed to a procedural schedule in which written submissions on annulment will be completed within ten months. Therefore, "the continued stay of enforcement can be expected to be of relatively short duration."[23]

48.     *Second*, according to Pakistan, there is no risk that Pakistan will not comply with its obligations under the Convention and pay the Award if it is not annulled. In particular, Pakistan asserts the following:

    a.  Pakistan has consistently complied with its international obligations in general and with the ICSID Convention specifically. There is no evidence to the contrary, and most ICSID cases against Pakistan have been settled and discontinued.[24] In fact, there has not been a single ICSID award rendered against Pakistan, except the Award in this case.[25]

    b.  The *Kaya Bey* incident does not establish a "track record" of non-compliance as Karkey suggests. Rather, because the *Kaya Bey* has now been released in accordance with the Tribunal's decision on provisional measures, the Committee should consider it an example of Pakistan's compliance with orders in ICSID proceedings.[26]

    c.  Karkey's discussion of Pakistan's local courts is misplaced because there is no reason Karkey would need to turn to the Pakistani court system to enforce the Award; ICSID awards are complied with voluntarily rather than enforced before the Respondent's

---

[22]  Pakistan's Presentation, slide 6.

[23]  Pakistan's Reply Submission, ¶ 13, *quoting* **APL-024**, *Libananco Holdings Co. Limited v. Republic of Turkey*, ICSID Case No. ARB 06/08, Decision on Applicant's Request for a Continued Stay of Enforcement of the Award, 7 May 2012, ¶ 20.

[24]  Pakistan's First Submission, ¶¶ 59-60.

[25]  Pakistan's Presentation, slide 3.

[26]  Pakistan's Reply Submission, ¶ 26.

courts.[27] In any event, the decisions of Pakistani courts reflect Pakistan's commitment to the ICSID Convention.[28]

49.   *Third*, although Pakistan rejects Karkey's suggestion that Pakistan must undertake to comply with the Award, it has provided written confirmation to that effect.[29] Specifically, Pakistan has filed a letter from the Attorney-General for Pakistan stating the following (the "**Attorney-General's Statement**"):

> As the Attorney-General for the Islamic Republic of Pakistan, I declare and confirm that Pakistan recognizes its international obligations in accordance with international law. Pakistan actively participates in international dispute settlement systems, arbitral and judicial processes, and complies with its obligations in those proceedings. I also declare and confirm that Pakistani law is compatible with the ICSID Convention, which it explicitly incorporated in the Arbitration (International Investment Disputes) Act, 2011.
>
> Pakistan strongly believes that its Request for Annulment of the Award and its request for confirmation of the stay of enforcement should be granted. In case, however, the Award is not annulled, Pakistan hereby undertakes to recognize the Award rendered by the Arbitral Tribunal as binding and will enforce the pecuniary obligations imposed by that award.[30]

50.   Further, during Pakistan's oral submissions, the Additional Attorney-General confirmed that Pakistan is fully committed to voluntarily complying with the award if it is not annulled.[31] He also stated that Pakistan is "willing to provide a further declaration by the Attorney-General to address any concerns that the members of the committee might have in this regard."[32] This Attorney-General confirmed this offer in a subsequent letter.

---

[27] Pakistan's Reply Submission, ¶ 27.

[28] Pakistan's Reply Submission, ¶¶ 28-29.

[29] Pakistan's Reply Submission, ¶¶ 19-23.

[30] **AP-031**, Statement of the Attorney-General of Pakistan, 26 January 2018 (paragraph numbers omitted).

[31] Tr. 53:20-54:7.

[32] Tr. 106:15-18.

51.   *Fourth*, Pakistan argues that continuing the stay would not cause any hardship for Karkey. Regarding Karkey's allegations of the costs related to the *Alican Bey* and *Iraq*, Pakistan considers Karkey's arguments an "attempt to repackage and reuse" damages claims advanced in the original proceeding.[33] In Pakistan's view, "the only viable hardship that Karkey has claimed is the small maintenance costs required for the *Alican Bey*, which Pakistan will take ownership of if the Award is not annulled."[34] In that case, Karkey will be entitled to 12% interest on several of the amounts awarded until the Award is satisfied, which will cover any maintenance costs incurred in the meantime.[35] Indeed, Pakistan points out that the Award, if not annulled, will have generated hundreds of millions of dollars of interest in favour of Karkey.[36] This will serve to compensate Karkey for any delay in payment.[37]

52.   *Fifth*, Pakistan argues that it would suffer hardship if the stay were terminated.[38] In this context, Pakistan alleges the following:

   a.   Pakistan would have to pay the significant amount of the Award by diverting public funds from its annual budget, causing hardship to its population.[39]

   b.   This hardship would only worsen if the Award were annulled and Karkey were to delay repayment of the funds. Karkey has provided no evidence or assurances to show its ability or willingness to repay the Award promptly.[40]

---

[33] Pakistan's Reply Submission, ¶ 34.

[34] Pakistan's Reply Submission, ¶ 35.

[35] Pakistan's Reply Submission, ¶ 35.

[36] Pakistan's Presentation, slide 20.

[37] Pakistan's Presentation, slide 37.

[38] Pakistan's Reply Submission, ¶¶ 36-38.

[39] Pakistan's Presentation, slide 17. Pakistan states that the amount of the Award plus interest is over five times the amount currently allotted for Pakistan's Health Affairs and Services budget, and over 90% of its current Education Affairs and Services budget.

[40] Pakistan's Reply Submission, ¶ 38.

c.  If the Award were annulled, Pakistan would face significant legal fees in attempting to enforce the annulment decision and recover amounts paid, and there is no guarantee that such proceedings would succeed.[41]

### *(4)  Security for the Award*

53.  Pakistan opposes Karkey's request that the Committee require Pakistan to provide a security or guarantee for the Award as a condition of continuing the stay. Pakistan argues that such a security or guarantee is (a) beyond the Committee's competence, and (b) in any event, inappropriate in this case.

54.  According to Pakistan, Karkey, as the Party requesting the security, bears the burden of proving why such security should be granted.[42]

### a.  The Committee's Authority to Order Security

55.  Pakistan's position is that there is no basis in the Convention, when properly interpreted in accordance with Article 31(1) of the Vienna Convention on the Law of Treaties (the "**VCLT**"), or in the Arbitration Rules for an *ad hoc* committee to order an applicant to post security as a condition of continuing the stay.[43] Nor is a committee able to order such security as a provisional measure, as Article 47 of the Convention concerning provisional measures is not among the provisions that apply *mutatis mutandis* to annulment proceedings.[44]

56.  Pakistan cites the decisions of previous committees that interpreted the Convention and determined that it does not permit a committee to order security for an award. Specifically,

---

[41] Pakistan's Presentation, slide 28.

[42] Pakistan's Presentation, slide 31; **APL-015**, *Pey Casado v. Republic of Chile*, ICSID Case No. ARB/98/2, Decision on Stay of Enforcement of the Award, 5 May 2010, ¶ 29 ("The Claimants bear the burden of proving that security should be ordered and that, if it is not ordered, they will suffer prejudice").

[43] Pakistan's Reply Submission, ¶¶ 39-52.

[44] Pakistan's Reply Submission, ¶ 51.

Pakistan endorses the interpretation of the committee in *Azurix v. Argentina*, which found that

> To apply a strict rule that the price for the stay is the provision of security … would be in derogation to the approach to interpretation reflected in Article 31(1) of the Vienna Convention and also would work in a de facto sense impermissibly to amend the ICSID Convention by substituting a new and absolute enforcement mechanism for the qualified provisions of the Convention itself.[45]

57.     While Pakistan acknowledges that some committees have conditioned the stay on the provision of security, it argues that this area of law has not crystallized, and that the Committee need not follow those decisions.[46]

58.     Pakistan also cites the statement of the committee in *El Paso v. Argentina* that requiring the State to provide a guarantee "would be tantamount to punishing [the State] for having applied for the annulment of the award. Clearly, such sanction is not provided for in the ICSID Convention and rules."[47]

59.     In addition, Pakistan relies on the *travaux préparatoires* of the Convention, which shows that an early draft included the possibility that an *ad hoc* committee could require a security as a condition for the stay, but that this provision was later removed.[48] For Pakistan, this indicates that there was no agreement among the drafters to grant committees this power.[49]

---

[45] **APL-029**, *Azurix Corp. v. Argentine Republic*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 28 December 2007, ¶¶ 34-35.

[46] Tr: 109:11-110:15.

[47] **APL-021**, *El Paso Energy International Company v. Argentine Republic*, ICSID Case No. ARB/03/15, Decision on Argentina's Request for Stay of Enforcement of the Award, 14 November 2012, ¶ 55.

[48] Pakistan's Reply Submission, ¶¶ 47-50; Pakistan's Presentation, slide 26; **APL-027**, *History of the ICSID Convention*, vol. 1, p. 238.

[49] Pakistan's Reply Submission, ¶ 50.

### b. Whether Conditioning the Stay on Security is Appropriate

60. Pakistan contends that, in any event, requiring it to post a security is inappropriate because the security would (a) unduly benefit Karkey, (b) add a cost to a request for annulment, and (c) possibly be subject to enforcement proceedings by third parties.

61. Regarding undue benefit to Karkey, Pakistan submits that this imbalance has been recognised by several committees, including in the cases *Mitchell v. DRC*,[50] *MINE v. Guinea*,[51] *Occidental v. Ecuador*[52] and *Enron v. Argentina*.[53]

62. In Pakistan's view, "[t]here are simply no legal or factual reasons that would allow the Committee to put Karkey in a better position because Pakistan validly exercised its rights under the Convention and seek annulment of the Award."[54]

63. Pakistan also submits that requiring it to post security would place a heavy burden on the State. It would force Pakistan to set aside a significant sum pending the annulment proceeding, even though the Award may eventually be annulled.[55] In addition, as noted by the committee in *MINE v. Guinea*, posting security may involve a "very heavy expenditure for the fees of the guaranteeing bank" and "freezing the amount of the Award and the

---

[50] **APL-016**, *Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on Stay of Enforcement of the Award, 30 November 2004, ¶ 32 ("The strongest argument against the granting of a guarantee … is that its beneficiary would be in a much more favourable position regarding the enforcement of the award than he was before the provisional stay. … The above argument is strengthened by the fact that such an improvement in the position of the beneficiary of the award is juxtaposed with Article 55 of the Convention, which preserves the immunity of the signatory States from execution").

[51] **APL-020**, *Maritime International Nominees Establishment v. Republic of Guinea*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶ 22 ("To require such a guarantee would … place MINE in a much more favourable position than it enjoys at the present time and also in a more favourable position than it enjoyed prior to the provisional stay").

[52] **APL-013**, *Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Ecuador*, ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award, 30 September 2013, ¶ 67 ("In normal circumstances, conditioning the stay on the posting of security would go beyond counterbalancing the effect of the stay: it would put the award creditor in a better situation than it was prior to the annulment application, because it would provide the creditor with a form of conditional payment in advance").

[53] **APL-011**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentine Republic*, ICSID Case No. ARB/01/3, Decision on Claimant's Second Request to Lift Provisional Stay of Enforcement, 20 May 2009, ¶ 52 ("condition of security will often place the award creditor in a better position than it would have been in if annulment proceedings had not been brought").

[54] Pakistan's Reply Submission, ¶ 59.

[55] Pakistan's Reply Submission, ¶¶ 60-63.

interest accruing thereon."[56] Pakistan argues that this burden would impede its right to seek annulment of the Award.[57]

64.     Furthermore, Pakistan considers that there is "an actual risk" that any funds Pakistan is required to provide as security or place in escrow might be subject to attachment by third-parties, which would cause irreparable harm.[58] Pakistan cites the decision in *Enron v. Argentina*, in which the committee recognized the risk that such funds would then be irrecoverable by the applicant in the event that the award is annulled, and stated that "where that risk is very high … that fact will militate strongly against lifting the stay or against requiring security to be provided as a condition of any continuation of the stay."[59]

## B.     Karkey's Position

65.     Karkey submits that the Committee should deny Pakistan's request for continuation of the stay of enforcement, or in the alternative, order Pakistan to provide security as a condition for continuation of the stay. In support of this position, Karkey argues that Pakistan, as the party seeking continuation of the stay, bears the burden of establishing specific circumstances that require the stay, and has failed to do so. In Karkey's view, all the relevant circumstances justify termination of the provisional stay.

### *(1)     Moving Party and Burden of Proof*

66.     Karkey rejects what it considers Pakistan's attempt to improperly shift the burden of proof. Karkey points out that in the Annulment Application, Pakistan stated that it "respectfully requests that the enforcement of the Award be stayed until the *ad hoc* Committee decides on this request for annulment."[60] Accordingly, in Karkey's view, the "stay would not have been an issue at all in this proceeding had Pakistan not requested it; Karkey is therefore

---

[56] **APL-020**, *Maritime International Nominees Establishment v. Republic of Guinea*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶ 22.

[57] Pakistan's Reply Submission, ¶ 62.

[58] Pakistan's Reply Submission, ¶ 64-68.

[59] **APL-011**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentine Republic,* ICSID Case No. ARB/01/3, Decision on Claimant's Second Request to Lift Provisional Stay of Enforcement, 20 May 2009, ¶ 21.

[60] Karkey's Reply Submission, ¶ 18, *quoting* Annulment Application, ¶ 105.

merely reacting to, and opposing, Pakistan's proposal to continue the stay."[61] For Karkey, this means that Pakistan bears the burden of justifying its request, following the principle *onus actori incumbit probation*.[62]

67.    Karkey rejects Pakistan's interpretation of Arbitration Rule 54(4), which provides that a "request pursuant to paragraph … (2) (second sentence) … shall specify the circumstances that require the stay or its modification or termination." Karkey contends that this provision merely requires each party to articulate its position supporting or opposing the stay; it does not alter the burden of proof.[63] As noted by the committee in *Standard Chartered v. TESCO*, "it is for the award debtor to advance grounds (supported as necessary by evidence) for the stay. If the award creditor disputes these grounds, it must also advance evidence in support of any 'positive allegations' that it makes."[64]

68.    According to Karkey, *ad hoc* committees have consistently held that the party seeking continuation of the stay bears the burden of proof.[65] For example, the committee in *von Pezold v. Zimbabwe* stated that "[i]t is for the party requesting continuation of the stay to establish that there are circumstances that require such continuation; it is not for the counterparty to show that there are 'exceptional circumstances' that require the lifting of

---

[61] Karkey's Reply Submission, ¶ 18.

[62] Karkey's Reply Submission, ¶ 19.

[63] Karkey's Reply Submission, ¶ 19; *cf.* Karkey's First Submission, ¶¶ 5-6.

[64] **ACL-025**, *Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited*, ICSID Case No. ARB/10/20, Decision on Applicant's Request for a Continued Stay on Enforcement of the Award, 12 April 2017, ¶ 54.

[65] Karkey's First Submission, ¶ 8, n. 9-11; **ACL-001**, *Burlington Resources Inc. v. Republic of Ecuador,* ICSID Case No. ARB/08/05, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶¶ 74-75; **ACL-002**, *Bernhard von Pezold and others v. Republic of Zimbabwe,* ICSID Case No. ARB/10/15, Decision on Stay of Enforcement of Award, 24 April 2017, ¶ 80; **ACL-004**, *SGS Société Générale de Surveillance S.A. v. Paraguay*, ICSID Case No. ARB/07/29, Decision on Paraguay's Request for the Continued Stay of Enforcement of the Award, 22 March 2013, ¶ 86 ("Based on the plain language of Rule 54(4) of the ICSID Arbitration Rules, it is also clear to the Committee that the party interested in the continued stay bears the burden of proof to demonstrate the existence of circumstances that warrant said continuation"); **ACL-005**, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/11/25, Decision on Stay of Enforcement of the Award, 4 April 2016, ¶ 94; **ACL-006**, *Flughafen Zürich A.G. and Gestión e Ingenería IDC S.A. v. Venezuela*, ICSID Case No. ARB/10/19, Decision on the Termination of the Stay of Enforcement of the Award, 11 March 2016, ¶ 59; **ACL-007**, *Ioannis Kardassopoulos and Ron Fuchs v. Republic of Georgia*, ICSID Case Nos. ARB/05/18 and ARB/07/15, Decision of the *ad hoc* Committee on the Stay of Enforcement of the Award, 12 November 2010, ¶ 26; **ACL-008**, *Sempra Energy International v. Argentina*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009, ¶ 27.

the stay."[66] In *Burlington v. Ecuador*, the committee rejected the applicant's attempt to reverse the burden of proof.[67]

69.     Karkey contends that the decisions in *Enron v. Argentina* and *Occidental v. Ecuador*, cited by Pakistan, do not support Pakistan's argument that the party resisting the stay bears the burden of proof; they "merely stand for the proposition that an award creditor is required to support allegations that the award debtor is unlikely to comply with the award."[68]

### (2)     Applicable Legal Standard

70.     Karkey submits that a "stay in the enforcement of an award is an exceptional remedy under the ICSID Convention," and should not be granted lightly.[69] For Karkey, it is notable that the default rule under Arbitration Rule 54(5) is that a stay automatically terminates unless the Committee decides to continue it.[70]

71.     Thus, Karkey rejects Pakistan's suggestion that continuation of the stay is standard practice or essentially automatic.[71] Rather, most *ad hoc* committees considering the issue have either terminated the stay or set conditions for its continuation.[72] According to Karkey, the trend in recent ICSID cases illustrates the exceptional nature of the stay. Of the 21 publicly-available decisions on the stay of enforcement that were issued from 2013 to 2017, seven rejected the stay of enforcement, nine granted stays subject to conditions (five required

---

[66] **ACL-002**, *Bernhard von Pezold and others v. Republic of Zimbabwe,* ICSID Case No. ARB/10/15, Decision on Stay of Enforcement of Award, 24 April 2017, ¶ 80.

[67] **ACL-001**, *Burlington Resources Inc. v. Republic of Ecuador,* ICSID Case No. ARB/08/05, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶ 74 ("This reversal of the burden of proof of the circumstances that justify the continuation of a stay of enforcement under the terms of ICSID Arbitration Rule 54(4) is not acceptable").

[68] Karkey's Reply Submission, ¶ 20; **APL-011**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentine Republic,* ICSID Case No. ARB/01/3, Decision on Claimant's Second Request to Lift Provisional Stay of Enforcement, 20 May 2009, ¶ 6(e); **APL-013**, *Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Ecuador,* ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award, 30 September 2013, ¶ 96.

[69] Karkey's First Submission, ¶ 9, *quoting* **ACL-011**, *Wena Hotels Ltd. v. Egypt*, ICSID Case No. ARB/98/4, Procedural Order No. 1 of the *ad hoc* Committee concerning the Continuation of the Stay of Enforcement of the Award, 5 April 2001, ¶ 7(b); Karkey's Reply Submission, ¶ 28;

[70] Tr. 77:20-24.

[71] Karkey's First Submission, ¶ 9; Karkey's Reply Submission, ¶¶ 23-31.

[72] Karkey's First Submission, ¶ 9, *citing* **ACL-110**, ICSID, "Updated Background Paper on Annulment for the Administrative Council of ICSID," 5 May 2016, ¶ 58. Karkey alleges that Pakistan misrepresents ICSID statistics on the outcome of decisions on the stay of enforcement. Karkey's Reply Submission, ¶¶ 26-28.

security and four required a written undertaking), one partially terminated the stay, and only four decisions granted the stay unconditionally.[73]

72.     Further, Karkey contends that Pakistan's position contradicts the terms of Article 52(5) of the Convention and Arbitration Rule 54, which direct *ad hoc* committees to determine whether a stay is "required" based on the specific "circumstances" of the case.[74] Karkey stresses the use of the word "require" in Article 52(5) and Arbitration Rule 54(4), citing the statement of the committee in *SGS v. Paraguay* that

> Article 52(5) of the ICSID Convention provides that the stay shall only be continued if the Committee considers that "the circumstances so require". The Convention does not use other less categorical verbs, such as "recommend", "deserve", "justify" or similar words, but resorts to the imperative verb "require".[75]

73.     In Karkey's view, it is also critical that Article 52(2) of the Convention uses the permissive term "*may*" regarding committees' power to stay enforcement of the award, thereby granting committees full discretion to "terminate a stay even if circumstances favour a stay."[76]

74.     Karkey notes that neither the Convention nor the Arbitration Rules indicate the nature of the circumstances requiring continuation of a stay, but that committees have considered a range of circumstances, including:

- The risk of irreparable prejudice or catastrophic consequences for the award debtor if the stay were terminated;

- The prospects of recoupment of monies paid to the award creditor if annulment were to succeed;

- The risk of non-compliance with the award by the award debtor; and

---

[73] Karkey's Reply Submission, ¶ 24 and Appendix A.

[74] Karkey's First Submission, ¶ 9; Karkey's Reply Submission, ¶¶ 23-31.

[75] **ACL-004**, *SGS Société Générale de Surveillance S.A. v. Paraguay*, ICSID Case No. ARB/07/29, Decision on Paraguay's Request for the Continued Stay of Enforcement of the Award, 22 March 2013, ¶ 87.

[76] Karkey's Presentation, slide 3; *see* Karkey's First Submission, ¶14; Karkey's Reply Submission, ¶ 29; Karkey's Presentation, slide 2; **ACL-015**, Schreuer *et al*, The ICSID Convention, ¶ 575.

- The risk of harm to the award creditor if the stay were continued.[77]

75. With respect to the first criterion listed above (harm to the award debtor), Karkey argues that the standard is high and that "[s]uch allegations must be substantiated by 'specific evidence and data' that give rise to a 'particularized fear' of catastrophic immediate harm."[78]

76. Regarding the third criterion listed above (the possibility of non-compliance with an award), Karkey rejects Pakistan's contention that the Committee does not have the power to assess the risk that Pakistan will not comply with the Award if it is not annulled.[79] Karkey contends that numerous *ad hoc* committees have considered this a relevant factor.[80]

### (3)     *Circumstances that Require the Stay in this Case*

77. Karkey submits that in this case, all the relevant circumstances support a decision to terminate the provisional stay of enforcement. In particular, Karkey argues that (a) there is a significant risk that Pakistan will not comply with the Award if it is upheld; (b) Pakistan has failed to meaningfully commit to complying with the Award; (c) if the Award were annulled, Pakistan would not suffer irreparable harm; and (d) continuing the stay would cause hardship for Karkey.

---

[77] Karkey's Presentation, slide 6; See Karkey's First Submission, ¶ 13 (identifying the same criteria, as well as (i) possible dilatory moves by the party seeking the stay and (ii) whether that party has made a reliable commitment to honor the award).

[78] Karkey's Reply Submission, ¶ 33, *quoting* **ACL-027**, *CDC Group PLC v. Republic of Seychelles*, ICSID Case No. ARB/02/14, Decision on Whether or Not to Continue Stay and Order, 14 July 2004, ¶¶ 17-18.

[79] Karkey's Reply Submission, ¶ 6.

[80] Karkey's Presentation, slide 7, *citing* **ACL-001**, *Burlington Resources Inc. v. Republic of Ecuador*, ICSID Case No. ARB/08/05, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶ 84; **ACL-008**, *Sempra Energy International v. Argentina*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009, ¶¶ 24, 30; **ACL-014**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, First Decision on Stay, 7 October 2008, ¶¶ 83–94; **ACL-005**, *OIEG B.V. v. Venezuela*, ICSID Case No. ARB/11/25 Decision on Stay, 4 April 2016, ¶ 98; **ACL-017**, *Tidewater and others v. Venezuela*, ICSID Case No. ARB/10/5, Decision on Stay, 29 February 2016, ¶ 35; **ACL-025**, *Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited*, ICSID Case No. ARB/10/20, Decision on Stay, 12 April 2017, ¶¶ 62, 64.

78.     *First*, Karkey asserts that Pakistan's previous conduct shows an unwillingness to comply with its obligations toward Karkey and obligations under the ICSID Convention, and thus casts significant doubt on whether Pakistan would honour the Award if it is upheld.[81] Karkey advances several allegations in this regard, including:

  a.  During the original proceeding, Pakistan engaged in dilatory tactics. As a result, the tribunal rendered a cost award of US$10 million against Pakistan, noting that "Pakistan seemed to be trying to delay and disrupt the[] proceedings."[82]

  b.  Pakistan refused to comply with the tribunal's provisional measures decision ordering release of the *Kaya Bey* for seven months, contrary to Article 47 of the ICSID Convention.[83] The Sindh High Court in Pakistan declined to recognize the effect of the tribunal's decision.[84]

  c.  In 2002, the Supreme Court of Pakistan restrained the claimant in *SGS v. Pakistan* from pursuing its ICSID arbitration against the State.[85]

  d.  Pakistan disregarded a sovereign guarantee that accompanied the contract at issue in the original arbitration, even though it had been signed on behalf of the President for and on behalf of the State.[86]

79.     Karkey acknowledges that Pakistan has no history of non-compliance with ICSID awards, but it does not find comfort in this fact because no awards have been rendered against Pakistan.[87] In this regard, Karkey's counsel stated that "we don't know whether they would

---

[81] Tr. 103:12-104:15.

[82] Karkey's First Submission, ¶ 16; Award, ¶ 1073; *see* ¶¶ 1063-1064, 1076. Karkey considers the Annulment Application and Pakistan's submissions in this annulment proceeding examples of further dilatory tactics. Karkey's First Submission, ¶ 18.

[83] Karkey's First Submission, ¶ 16; Karkey's Presentation, slide 8.

[84] Karkey's Presentation, slide 8.

[85] Karkey's First Submission, ¶ 27, *citing* **ACL-019**, *SGS Société Générale de Surveillance S.A. v. Islamic Republic of Pakistan*, ICSID Case No. ARB/01/13, Procedural Order No. 2, 16 October 2002, 18 ICSID Rev. 293 (2003), p. 296; Karkey's Presentation, slide 8.

[86] Tr. 89:11-23; Award, ¶ 643.

[87] Tr. 117:4-12.

comply or not. The only thing we have to go by is their record of compliance with Tribunal decisions in our case."[88] According to Karkey:

> Pakistan has breached every important commitment it has made to Karkey from the very start of the parties' relationship … leaving no doubt that at every opportunity presented to it Pakistan will breach, delay and defy, and if given more time under a stay in these proceedings, will undoubtedly seek to reposition its assets in a manner that would make enforcement by Karkey even more difficult.[89]

80.     *Second*, Karkey argues that although the Convention requires Pakistan to voluntarily comply with the Award, Pakistan has not meaningfully confirmed its intention or ability to pay the Award if it is not annulled.[90] In its written submissions, Karkey complained that Pakistan had "not committed to honor the Award."[91] After Pakistan filed the Attorney-General's Statement, Karkey argued that this confirmation was not reliable because it merely restates Pakistan's obligation under Article 54 of the Convention.[92] According to Karkey, *ad hoc* committees in annulment proceedings involving Argentina considered such "comfort letters" insufficient to justify a stay of enforcement.[93] Karkey submits that additional written commitments by Pakistan would be similarly unreliable, in light of Pakistan's record of non-compliance with its obligations to Karkey.[94]

---

[88] Tr. 117:13-20.

[89] Tr. 103:12-104:9.

[90] Karkey's First Submission, ¶¶ 19-21. Karkey states that it sent Pakistan a letter before the Annulment Application demanding compliance with the award, but received no confirmation in response. Karkey's First Submission, ¶¶20-21; **AC-004**, Letter from Karkey to the Prime Minister of Pakistan and others, 5 September 2017.

[91] Karkey's Reply Submission, § II (title); *see* Karkey's First Submission, ¶ 21.

[92] Karkey's Presentation, slide 10.

[93] Karkey's Presentation, slide 11, *citing* **ACL-016**, *Total v. Argentina*, ICSID Case No. ARB/04/01, Decision on Stay, 4 December 2014, ¶ 107 ("Argentina is under an unconditional duty to 'abide by and comply with' the Award according to Article 53. Argentina cannot insist … that it is complying with the ICSID Convention, and rely on such alleged compliance as a factor to maintain the stay, if at the same time it insists in forcing Total to activate Article 54 as a condition for payment"); **ACL-014**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, First Decision on Stay, 7 October 2008, ¶ 102.

[94] Tr. 118:7-13.

81.     *Third*, Karkey's position is that Pakistan has not proven that it would suffer irreparable harm if the stay were terminated.[95] In response to Pakistan's allegation that its population would be harmed if funds were diverted from its annual budget to pay the Award, Karkey asserts that Pakistan has failed to substantiate this allegation, and in any event, a general impact on Pakistan's budget would not justify the stay.[96] In Karkey's view, "if a general impact on a State's budget were sufficient to require a stay, a stay would become, in essence, automatic whenever the award debtor is a State."[97]

82.     In response to Pakistan's concern that it may not recoup any amount paid to Karkey if the Award were annulled, Karkey offers to maintain any sums collected in an escrow account until the Committee issues its decision on annulment.[98] According to Karkey, this offer should entirely alleviate Pakistan's concerns about difficulty recovering amounts paid under the Award.

83.     *Fourth*, according to Karkey, it would suffer serious harm if the Committee were to continue the stay. In particular, Karkey alleges the following potential harms:

- Continued delay in collecting the amount of the Award and putting those funds to productive uses;
- Reduced standing with creditors and insurers;
- Continuing maintenance costs for the *Alican Bey* and the *Iraq*; and
- Continuing harassment in connection with stewardship of the *Alican Bey* and the *Iraq*.[99]

---

[95] Karkey's Reply Submission, ¶¶ 32-40.

[96] Karkey's Reply Submission, ¶¶ 34-37; Karkey's Presentation, slide 13; **ACL-001**, *Burlington Resources Inc. v. Republic of Ecuador*, ICSID Case No. ARB/08/05, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶ 83 ("The argument that the termination of the stay would mean reallocation of funds within the budget is inherent to the need to satisfy any financial obligation by a State. It is a general argument that any State could make, which has been rejected in the past and which the Committee does not consider to establish the minimal gravity required to justify a continuation of the stay").

[97] Karkey's Reply Submission, ¶ 36.

[98] Karkey's First Submission, ¶¶ 38-39.

[99] Karkey's Presentation, slide 15.

### (4)    Security for the Award

84.    As an alternative, Karkey requests that the Committee continue the stay on the condition that Karkey post "full and inescapable" security for the Award.[100] Karkey proposes the following possible forms of security: (a) a standby letter of credit, (b) an unconditional bank guarantee, or (c) an escrow account pledged in favour of Karkey.

85.    In all cases, Karkey requests that Pakistan bear the costs of the security and that Pakistan also be ordered to pay the costs to maintain the *Alican Bey* and the *Iraq*, as well as any other costs associated with Karkey's continued ownership of those vessels, during the pendency of the stay.[101]

### a.    The Committee's Authority to Order Security

86.    Karkey rejects Pakistan's argument that *ad hoc* committees lack competence to condition continuation of a stay on provision of security by the award debtor. According to Karkey, this power is "implied [in the Convention] as a lesser included power within the broad discretion granted to decide whether to stay enforcement pending annulment."[102] Karkey argues that several committees have expressly considered and rejected the arguments raised by Pakistan on this issue.[103]

---

[100] Tr. 104:16-18.

[101] Karkey's First Submission, ¶ 49.

[102] Karkey's Presentation, slide 20; Tr. 95:7-12; 1. **ACL-007**, *Ioannis Kardassopoulos and Ron Fuchs v. Georgia*, ICSID Case Nos. ARB/05/18 and ARB/07/15, Decision of the *ad hoc* Committee on the Stay of Enforcement of the Award, 12 November 2010, ¶ 29 ("The powers of the Committee to subject the stay of enforcement to conditions is implied by the broad discretion given to it under Article 52(5) of the Convention to stay enforcement of the award 'if it considers that the circumstances so require'").

[103] Karkey's Presentation, slide 21; **ACL-014**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, First Decision on Stay, 7 October 2008, ¶¶ 26, 31; **APL-016**, *Mr. Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on the Stay of Enforcement of the Award, 30 November 2004, ¶ 31; **ACL-025**, *Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited*, ICSID Case No. ARB/10/20, Decision on Stay, 12 April 2017, ¶ 79; **ACL-007**, *Ioannis Kardassopoulos and Ron Fuchs v. Georgia*, ICSID Case Nos. ARB/05/18 and ARB/07/15, Decision of the *ad hoc* Committee on the Stay of Enforcement of the Award, 12 November 2010, ¶ 29; **ACL-008**, *Sempra Energy International v. Argentina*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009, ¶ 109.

87.     Karkey points out that conditional stays are in fact common; of the 46 decisions on stays of enforcement that committees have issued, 23 granted the stay with conditions (14 required security in the form of bank guarantee or escrow, and 9 required a written undertaking).[104] As stated by the committee in *Standard Charter v. Tanzania*, "weight must be given to the fact that a sizable group of committees have ordered stays conditional on the provision of security."[105]

### b.     Whether Conditioning the Stay on Security is Appropriate

88.     Karkey submits that under the Convention, the *status quo* would be immediate payment of the Award, and it is therefore "fair and just to require security in exchange for a continued stay."[106] In Karkey's view, the benefits of a security are as follows:

   a.   Security ensures the effectiveness of awards.[107] Committees have held that where there is a risk of non-payment of the award, the stay should be conditioned upon security to protect against that risk.[108] In the present case, there is a significant risk that Pakistan will not voluntarily comply with the Award if it is not annulled, despite its obligation under the Convention.[109]

   b.   Requiring security for the award may "serve as a possible deterrent to requests for annulment that are motivated primarily by a desire to delay and, possibly, to avoid compliance."[110]

---

[104] Karkey's First Submission, ¶ 43; Karkey's Presentation, slide 22.

[105] Karkey's Presentation, slide 22; **ACL-025**, *Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited*, ICSID Case No. ARB/10/20, Decision on Stay, 12 April 2017, ¶ 8.

[106] Karkey's Presentation, slides 25-26; **ACL-011**, *Wena v. Egypt*, Decision on Stay, ¶ 7(b) ("it seems fair and just . . . that the continuation of the stay be counterbalanced by requiring the posting of security for the performance of the Award in the event the application is denied.").

[107] Karkey's First Submission, ¶¶ 43-44; Karkey's Presentation, slide 27; **ACL-020**, Schreuer, *Revising the System of Review*, p. 8 ("an important step to secure the effectiveness of awards would be to require the posting of a security or of a performance bond by the award debtor seeking annulment as a condition for a stay of the award's enforcement.").

[108] Karkey's First Submission, ¶ 43.

[109] Karkey's First Submission, ¶ 44.

[110] Karkey's Presentation, slide 28, *quoting* **ACL-027**, *CDC v. Seychelles*, Decision on Stay, ¶ 20.

89. According to Karkey, amount of the Award in this case favours provision of security. During oral statements, Karkey's counsel elaborated as follows:

> As the Repsol committee explained, those cases that have refused security have largely been cases where the award at issue was relatively small. This makes sense, as it naturally would be easier for a state to pay or a Claimant to locate and seize assets to satisfy a smaller award. Here the sheer size of the award makes it even more unlikely that Pakistan will comply with its payment obligations.[111]

90. Karkey considers Pakistan's concerns regarding the security unfounded. *First*, Karkey does not accept that requiring a security would expose Pakistan to any additional risk. This is because the security would operate only if the Award were *not* annulled, and as such, there is no concern about recouping amounts paid if the Award is annulled.[112] Indeed, in Karkey's view, the provision of security could be seen to reduce Pakistan's risk, as compliance with the Award is delayed pending the decision on annulment.[113]

91. *Second*, Karkey argues that any risk of attachment of the security by third-parties is irrelevant to the Committee's decision on the stay, and in any event, there is no such risk. In this regard, Karkey cites the committee in *Sempra v. Argentina*, which did not "see why its decision should be influenced by any desire to shield assets from being attached to satisfy any indebtedness to third parties."[114] Karkey also points to Pakistan's own statement that there is not a "long list of creditors seeking to collect award amounts against Pakistan."[115] In any case, Karkey asserts that there is no risk of attachment associated with a letter of credit or guarantee because collateral is not required to obtain these instruments.[116]

---

[111] Tr. 97:15-24; **ACL-021**, *Repsol v. Petroecuador*, Decision on Stay, ¶ 9.

[112] Karkey's First Submission, ¶ 46; Karkey's Presentation, slide 34; **ACL-015**, Schreuer, *Commentary*, ¶ 647.

[113] Karkey's First Submission, ¶ 47.

[114] Karkey's Presentation, slide 35; **ACL-008**, *Sempra Energy International v. Argentina*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009, ¶ 20

[115] Karkey's Presentation, slide 36, *quoting* Pakistan's Reply Submission, ¶ 12.

[116] Karkey's Presentation, slide 36.

92.   *Third*, Karkey denies[117] that a security would place it in a better position than it would have otherwise been; nor would it penalize Pakistan for applying for annulment. Again, Karkey agrees with the committee in *Sempra v. Argentina*, which stated that

> the appropriate comparison is not with a scenario where the award debtor would not comply with its obligation under Article 53 (where a guarantee would obviously be 'better'), but with one where the debtor would comply. In such case the guarantee would not place the award creditor in a better situation.[118]

## V.   THE *AD HOC* COMMITTEE'S CONSIDERATIONS AND CONCLUSIONS

### A.   The Relevant Legal Provisions

93.   In this section, the Committee recalls the relevant provisions of the Convention and Arbitration Rules.

94.   Article 52(5) of the Convention states:

> The Committee *may*, if it considers that *circumstances so require*, stay enforcement of the award pending its decision [on annulment]. If the applicant requests a stay of enforcement of the award in his [annulment] application, *enforcement shall be stayed provisionally until the Committee rules on such request*.[119]

95.   Article 53(1) of the Convention provides:

> The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

96.   Article 54(1) then goes on to state:

---

[117] Karkey's Presentation, slides 36-37.

[118] **ACL-008**, *Sempra Energy International v. Argentina*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009, ¶ 95.

[119] Convention, Art. 52(5) (emphasis added).

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

97.     Turning to the Arbitration Rules, Rule 54 provides in relevant part:

> (1) The party applying for the interpretation, revision or annulment of an award may in its application, and either party may at any time before the final disposition of the application, request a stay in the enforcement of part or all of the award to which the application relates. The Tribunal or Committee shall give priority to the consideration of such a request.
>
> (2) If an application for the revision or annulment of an award contains a request for a stay of its enforcement, the Secretary-General shall, together with the notice of registration, inform both parties of the provisional stay of the award. As soon as the Tribunal or Committee is constituted it shall, if either party requests, rule within 30 days on whether such stay should be continued; unless it decides to continue the stay, it shall automatically be terminated.
>
> […]
>
> (4) A request pursuant to paragraph (1), (2) (second sentence) or (3) shall specify the circumstances that require the stay or its modification or termination. A request shall only be granted after the Tribunal or Committee has given each party an opportunity of presenting its observations.

### B.     Discretion of the Committee

98.     It is clear from the wording "[t]he Committee may" in Article 52(5) of the Convention that the Committee has discretion to decide whether or not to use its authority to stay enforcement of the Award.

99.  As the committee in *Kardassopoulos v. Georgia* noted, a "[s]tay of enforcement during the annulment proceeding is by no way automatic, quite to the contrary, a stay is contingent upon the existence of relevant circumstances which must be proven by the Applicant."[120]

100.  The only "automatic" stay is provided for by Arbitration Rule 54(2) providing that the Secretary-General shall, together with the notice of registration, inform both parties of the provisional stay of the award. But thereafter, the decision is turned over to the Committee which shall, if either party requests, rule within 30 days on whether such stay should be continued. That provision expressly states that, unless the Committee decides to continue the stay, it shall automatically be terminated.

### C.   Burden of Proof

101.  As summarised in Section IV above, the Parties' dispute who bears the burden of proof regarding the stay of enforcement. In this context, the Committee notes that in the Application for Annulment, Pakistan stated that it "respectfully requests that the enforcement of the Award be stayed until the ad hoc Committee decides on this request for annulment."[121] Pakistan has maintained and repeated that request in its later submissions.

102.  As Karkey correctly points out, the stay would not have been an issue at all in this proceeding had Pakistan not requested it, and Karkey is therefore merely reacting to, and opposing, Pakistan's proposal to continue the stay.[122]

103.  Pakistan still is and has been from the beginning the proponent of the stay, and thus—as with any legal claim or proposition—ultimately bears the burden of proof according to the principle *onus actori incumbit probatio*.

---

[120] **ACL-007**, *Ioannis Kardassopoulos and Ron Fuchs v. Republic of Georgia*, ICSID Case Nos. ARB/05/18 and ARB/07/15, Decision of the *ad hoc* Committee on the Stay of Enforcement of the Award, 12 November 2010, ¶ 26
[121] Annulment Application, ¶ 105.
[122] Karkey's Reply Submission ¶ 18.

104.    This interpretation is supported by the wording of Arbitration Rule 54(4) that a request to continue a stay pursuant to Arbitration Rule 54(2) "*shall specify the circumstances that require the stay, or its modification or termination.*"[123]

105.    The Committee finds that, indeed, numerous *ad hoc* committees have confirmed that the party seeking continuation of the stay bears the burden of proof.[124]

106.    Therefore, the Committee has no doubt that Pakistan has the burden to prove that such circumstances exist in the present case.

### D.    Are There "Circumstances that Require" Continuation of the Stay?

107.    For its examination whether there are "circumstances that require" the continuation of the stay, the Committee notes the following:

108.    Karkey argues that the legal standard for harm to justify a stay is high and relies on decisions of *ad hoc* committees that have asked "whether termination of the stay would have … '*catastrophic' immediate and irreversible consequences* for [the State's] ability to conduct its affairs."[125] The Committee has some doubt that such a high threshold can be drawn from the wording of Arbitration Rule 54(4). But as the wording in Rule 54(2) provides that the request for a stay "shall specify the circumstances that require the stay," it seems clear that circumstances which are a normal effect of an ICSID Award for a state are not sufficient. Rather, the circumstances must be specific, and allegations of harm must be substantiated by "specific evidence and data" that give rise to a "particularized fear" of harm.[126] In particular, the word "require" in Rule 54(4) makes it clear that the circumstances must have a considerable weight in order to provide a  reason to change the

---

[123] Arbitration Rule 54(2) (emphasis added).

[124] To avoid repetition, reference is made to that cases mentioned in footnote 65 above. As shown by Karkey, the cases relied on by Pakistan indeed do not support the contrary. *See* Karkey's First Submission, ¶ 20.

[125] Karkey's Presentation, slide 12, *quoting Maritime International Nominees Establishment v. Republic of Guinea,* ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶ 27.

[126] *See* **ACL-027**, *CDC Group PLC v. Republic of Seychelles,* ICSID Case No. ARB/02/14, Decision on Whether or Not to Continue Stay and Order, 14 July 2004, ¶ 17 ("In the present case, by contrast, neither party has addressed the 'catastrophic consequences' issue beyond the single sentence contributed by the Acting Principal Secretary of the Seychelles' Ministry of Finance. The Committee has been *offered nothing by way of data or more specific information in support of the Seychelles' position*") (emphasis added).

normal result of an ICSID award, which is that the State "shall recognize" the award as binding "and enforce the pecuniary obligations" of the award.

109.   Pakistan has argued that there is no risk that it will not comply with the Award if it is not annulled. Both Parties have discussed this issue. However, the Committee does not consider it to be significant, because, as seen above, Pakistan has the burden of proving that circumstances exist which require a continuation of the stay while Karkey does not have the burden of proving that Pakistan will not comply with the Award if it is not annulled. Further details in this regard will be discussed below when the relevance of the letters of the Attorney-General dated 26 January and 9 February 2018 is examined.

110.   Pakistan alleges that the stay must be lifted in view of the the following circumstances:

   (i)     Enforcement of the Award would impact its budget.[127]
   (ii)    There is no guarantee that Pakistan would be able to recoup any amounts already collected by Karkey if the Annulment Application were to succeed.[128]
   (iii)   The Award has severe defects that make its annulment unavoidable.[129]
   (iv)    The Attorney-General's assurances provides sufficient security for Karkey.[130]

111.   Regarding **Circumstance (i) above**, *i.e.* the impact on Pakistan's budget, Pakistan has alleged that it would suffer "irreparable harm" because it "would be required to set aside a significant amount of public funds and allocate those funds to the payment of the Award," which would "take away from its annual budget" resulting in "fewer funds" for State-provided services "such as education, security and housing, among others."[131] In this context, Pakistan compares the amount of the Award to its health and education budgets.[132]

---

[127] Pakistan's First Submission, ¶¶ 62-66; *see above* ¶ 52(a).

[128] Pakistan's First Submission, ¶¶ 39, 67-71; *see above* ¶ 52(b).

[129] Pakistan's First Submission, ¶¶ 23 *et seq.*

[130] **AP-031**, Statement of the Attorney-General of Pakistan, 26 January 2018; *see above* ¶¶ 49-50.

[131] Pakistan's First Submission, ¶¶ 62-68.

[132] Pakistan's Presentation, slide 17.

112.   The Committee does not consider that these arguments by Pakistan provide specific evidence that gives rise to a particularized fear of harm, since such effects are inherent and "normal" to the pecuniary obligations imposed by an adverse ICSID award. While the Committee agrees that health services and education are important parts of the state budget, that does not mean that these are to be decreased due to the Award. It is for Pakistan to decide on its priorities as to which parts of the total state budget should be decreased in case of payment for the Award. Such budgetary effects alone are not in and of themselves a sufficient justification for a stay. If a general impact on a State's budget were sufficient to require a stay, a stay would become in essence automatic whenever the award debtor is a State. That result would be contrary to the plain language of Article 52(5) of the Convention and Arbitration Rule 54, and would destroy their effectiveness. As pointed out by Karkey, several *ad hoc* committees have confirmed this, finding that mere allegations of budgetary impact do not justify a stay.[133]

113.   Therefore, the budgetary effects alleged by Pakistan are not circumstances sufficient to require a stay.

114.   Regarding **Circumstance (ii) above**, *i.e.* that there is no guarantee that Pakistan would be able to recoup any amounts that had been collected by Karkey if the Annulment Application were to succeed, the Committee notes the following:

115.   The few *ad hoc* committees that have found a real risk of non-recoupment did so when the award creditor was an individual, or a shell company with a sole controlling individual, and where the risk of bankruptcy was shown to be a legitimate concern.[134] Karkey has

---

[133] **ACL-001**, *Burlington Resources Inc. v. Republic of Ecuador,* ICSID Case No. ARB/08/05, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶ 83 ("The argument that the termination of the stay would mean reallocation of funds within the budget is inherent to the need to satisfy any financial obligation by a State. It is a general argument that any State could make, which has been rejected in the past and which the Committee does not consider to establish the minimal gravity required to justify a continuation of the stay"); **ACL-005**, *OI European Group B.V. v. Bolivarian Republic of Venezuela,* ICSID Case No. ARB/11/25, Decision on Stay of Enforcement of the Award, 4 April 2016, ¶¶ 118-119; **CL-016**, *Total v. Argentina*, ICSID Case No. ARB/04/01, Decision on Stay, 4 December 2014, ¶ 83; *Maritime International Nominees Establishment v. Republic of Guinea*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶ 27 ("Poverty as such is not a circumstance justifying a stay any more than it would justify non-payment of an award").

[134] **APL-016**, *Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on Stay of Enforcement of the Award, 30 November 2004, ¶ 24; **APL-020**, *Maritime International Nominees Establishment v.*

provided evidence that it is a multi-billion-dollar company with assets around the world.[135] Pakistan has not provided any concrete evidence to suggest that Karkey could go bankrupt before the annulment proceedings conclude.

116. Further, Karkey has offered to maintain any collected sums in an escrow account until a decision on annulment is reached.[136]

117. In view of the above, the Committee concludes that Pakistan has failed to prove that it runs the risk of non-recoupment if the stay were lifted.

118. Regarding Pakistan's **Circumstance (iii) above**, *i.e.* that the Award has severe defects that make its annulment unavoidable, the Committee's conclusion can be short. The Committee has no reason to doubt that Pakistan submitted the annulment request in good faith. However the Committee shares the view expressed in *OIEG v. Venezuela*, that "the merits of an annulment application are not relevant for purposes of the decision on whether or not to grant the stay, or the continuation of the stay."[137] This has been confirmed by a number of other committees that have articulated the same point.[138]

119. Regarding Pakistan's **Circumstance (iv) above**, *i.e.* that the Attorney-General's Statement provides sufficient security for Karkey, the Committee considers the following:

---

*Republic of Guinea*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶ 14; **ACL-011**, *Wena Hotels Ltd. v. Egypt*, ICSID Case No. ARB/98/4, Procedural Order No. 1 of the *ad hoc* Committee concerning the Continuation of the Stay of Enforcement of the Award, 5 April 2001, ¶ 7(a).

[135] Karkey's First Submission, ¶ 37.

[136] Karkey's First Submission, ¶¶ 38-39.

[137] **ACL-005**, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/11/25, Decision on Stay of Enforcement of the Award, 4 April 2016, ¶ 115.

[138] *See, e.g.*, **ACL-017**, *Tidewater and others v. Venezuela*, ICSID Case No. ARB/10/5, Decision on Stay, 29 February 2016, ¶43; **ACL-007**, *Ioannis Kardassopoulos and Ron Fuchs v. Republic of Georgia*, ICSID Case Nos. ARB/05/18 and ARB/07/15, Decision of the *ad hoc* Committee on the Stay of Enforcement of the Award, 12 November 2010, ¶ 26; **APL-016**, *Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on Stay of Enforcement of the Award, 30 November 2004, ¶ 26; **ACL-012**, *Compañía de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentina*, ICSID Case No. ARB/97/3, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award rendered on 20 August 2007, 4 November 2008, ¶ 39; **ACL-008**, *Sempra Energy International v. Argentina*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009, ¶ 25; **ACL-001**, *Burlington Resources Inc. v. Republic of Ecuador*, ICSID Case No. ARB/08/05, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶ 71.

120.    Karkey has claimed in its written submissions that the stay must not be continued because Pakistan, though assuring that it has and will comply with its obligations under international law, had avoided assuring that it will comply with its obligations under the disputed Award in this case, should it not be annulled.[139] In this context, the Committee notes that, with its Reply submission, Pakistan submitted the Attorney-General's Statement, which expressly states:

> In case, however, the Award is not annulled, Pakistan hereby undertakes to recognize the Award rendered by the Arbitral Tribunal as binding and will enforce the pecuniary obligations imposed by that award.[140]

121.    Pakistan submitted a second letter dated 8 February 2018 in which the Attorney-General states:

> I confirm the assurances provided in my letter and as subsequently presented by the delegation of Pakistan during the course of hearing on 5 February 2018. For avoidance of doubt, Pakistan shall abide by and comply with the Award in conformity with Article 53 of the ICSID Convention, if it is not annulled.[141]

122.    The Committee is satisfied by these letters and does not share Karkey's view that the stay must be terminated because of Pakistan's failure to commit to complying with the Award. The Committee is further aware of the relevance given by committees in early annulment cases to similar comfort letters, particularly in cases involving Argentina.[142] However, the Committee also notes that the above assurance in the first letter repeats wording found in the first sentence of Article 54(1) of the Convention, and the second letter confirms Pakistan's obligations under Art. 53 of the Convention. Though Pakistan refers to these letters as unilateral declarations creating legal obligations under international law,[143] they do not go beyond the obligations already stated in the Convention for an ICSID Contracting State towards an award rendered pursuant to the Convention. Therefore, the obligations

---

[139] Karkey Reply Submission, ¶¶4 *et seq.*

[140] **AP-031**, Statement of the Attorney-General of Pakistan, 26 January 2018.

[141] Letter from the Attorney-General of Pakistan to the Committee of 9 February 2018.

[142] Tr. 122 *et seq.* (Committee Member Bull's Questions and Counsel's Responses).

[143] Pakistan's Letter of 16 February 2018, p.2.

confirmed in the letters already exist for Pakistan under the Convention itself, and the Attorney-General's assurances add no further security.

123. Further, if such assurances were to be considered a "circumstance" requiring a stay of enforcement, it would be rather easy for a State to achieve a stay simply by a letter of this kind re-confirming an obligation which it already has under the Convention. In fact, that would create the possibility for States to create an automatic stay of enforcement. Such a result would be contrary to the text and obvious intention of Arbitration Rule 54(4), which refers to "circumstances that require the stay."

124. However, the Committee notes that the second letter by the Attorney-General also states:

> The Government of Pakistan shall be pleased to provide any further assurances to the Annulment Committee … that it may require to be fully assured of Pakistan's commitment to complying with the Award, if it is not annulled. In this regard, I kindly request the Committee's guidance on the terms of any letter that would, in its view, provide it with the comfort necessary to continue the stay based exclusively on this sovereign assurance.

125. The Committee is ready to make use of this offer, and therefore has included it below as a possible option on which the Parties may agree as a condition for a continuation of the stay of enforcement. But, as concluded above, it is insufficient for Pakistan to unilaterally provide an assurance. Accordingly, such an assurance will be accepted as a condition only if Karkey finds it sufficient and agrees.

126. In view of the above considerations, the Committee reaches the following conclusion regarding Arbitration Rule 54(4): Taking into account the above considerations, the Committee concludes that Pakistan has not provided sufficient proof that circumstances exist in the present case which require a continuation of the stay, as mandated by Rule 54(4).

**E.  Conditions for Continuation of the Stay**

127.  Karkey has requested, in the alternative, that the Committee require Pakistan to provide a reasonable security if the stay is continued.[144] In response, Pakistan argues that neither the Convention nor the Arbitration Rules provides for a committee, in granting the stay of enforcement of an award, or the continuation thereof, to make such stay conditional on the provision of a security.[145]

128.  The Committee does not share Pakistan's view. The Committee recalls the wording of Article 52(5) of the Convention: "The Committee may, if it considers that circumstances so require, stay enforcement of the award …" As has been seen above, the word "may" makes it clear that this provision grants discretion to the Committee to either grant a stay or refuse it. In the view of the Committee, it is clear that between these opposing alternatives, this discretion logically includes medium solutions as a compromise, such as granting a conditional stay.

129.  This reasoning has been accepted by a number of other *ad hoc* committees.[146] In fact, the statistics provided by ICSID in its Background Paper on Annulment show that, of the 36 decisions granting a stay, 22 conditioned the stay upon the issuance of some type of security or written undertaking.[147]

130.  In this context, Pakistan has argued that "it is not uncommon for ICSID tribunals or committees to actually reach the point of maturity of a very critical legal theory years and even decades after first being tackled with the issue."[148] In principle, the Committee agrees. But, for the reasons mentioned above concerning the wording of Article 52 and the

---

[144] Karkey's First Submission, ¶42 *et seq.*

[145] Pakistan's Reply Submission ¶¶ 39-52; Tr. 70:10 *et seq.*

[146] *See, e.g.*, **ACL-008**, *Sempra Energy International v. Argentina*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009, ¶ 101 ("The Committee has reached the view, fortified by these precedents, that an *ad hoc* committee is empowered by the Convention to require the posting of security or another appropriate assurance of compliance as a condition of granting a stay of enforcement"); **ACL-014**, *Enron Corporation and Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, First Decision on Stay, 7 October 2008, ¶ 33.

[147] **APL-014**, ICSID, "Updated Background Paper on Annulment for the Administrative Council of ICSID," 5 May 2016, ¶ 58.

[148] Tr. 110:11-15.

discretion granted by the word "may", the Committee does not see any reason why this established practice of *ad hoc* committees should be reversed at this time.

131. Therefore, though the Committee has concluded above that Pakistan has not provided proof of circumstances requiring a stay, the Committee considers that it can use its discretion to continue the stay subject to conditions which the Parties might find feasible and a preferable solution. On the one hand, such a condition would provide Karkey security in the case that the Award is upheld. On the other hand, it would ensure that Pakistan would not be exposed to enforcement attempts during this proceeding and could recoup any amounts if the Award is annulled.

132. The Committee identifies the following options for a condition under which the stay could be continued:

    a.  The first option suggested by Karkey: a bank guarantee or standby letter of credit.[149]

    b.  The second option suggested by Karkey: an appropriately capitalized escrow account established by Pakistan pledged in favour of Karkey to satisfy the Award. The sums paid into the escrow account may be collected by Karkey in full if the Annulment Application is rejected; in the event of partial annulment, the funds may be collected partially by Karkey in the remaining amount of the Award rendered in its favor.[150]

    c.  The option suggested by Pakistan:  A written undertaking by Pakistan providing sufficient assurance that Pakistan will comply with the Award if or in so far as it is not annulled.[151]

    d.  Beyond these three options proposed by the Parties, the Committee would be ready to consider any other condition which the Parties may be able to find and agree on in their discussion after taking note of the present Decision of the Committee.

---

[149] Karkey's First Submission, ¶ 48(a).
[150] Karkey's First Submission, ¶ 48(b).
[151] Pakistan's letter of 16 February 2018, p.6.

133.   The Parties are invited to liaise as soon as possible to discuss whether any of the above options can be agreed. In such a case, the Parties are invited to include in their agreement any further details they consider necessary, for example that Karkey should agree to bear the costs of any bank guarantee, stand-by letter of credit, escrow account or other arrangement should the Award ultimately be annulled.

134.   To give the Parties time for such discussions, the Committee considers it should continue the stay for two months from the date of this Decision.

135.   If, by that time, the Parties have not informed the Committee of an agreement, the stay of enforcement shall be terminated.

## VI.   DECISION

**136.   For the reasons above, the *ad hoc* Committee holds as follows:**

**a.   The stay of enforcement shall continue for a period of two months from the date of this Decision.**

**b.   If, by the expiration of the period of two-months from the date of this Decision, the Parties have not informed the Committee that they have reached an agreement regarding the conditions for continuation of the stay of enforcement, the stay shall be terminated.**

On behalf of the *ad hoc* Committee,

Prof. Karl-Heinz Böckstiegel
President of the *ad hoc* Committee
Date:  22 February 2018